IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PELLEGRINO FOOD PRODUCTS CO., INC., )
as assignee of the Rights of the City of Warren, *et* )
*al*., )
)
        Plaintiffs, )
  v. )  C.A. No. 05-312 Erie
)  Judge McLaughlin
AMERICAN AUTOMOBILE INSURANCE CO., )
)
)
)
        Defendant. )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

Plaintiffs City of Warren, Pellegrino Food Products, Inc. ("Pellegrino Foods"), and three of its corporate officers - Anthony Pellegrino, Angela Pellegrino, and Thomas Pellegrino (collectively, "Pellegrinos") - filed the instant declaratory judgment action seeking a declaration from the Court that the Defendant, American Automobile Insurance Co ("AAIC"), a wholly-owned subsidiary of Fireman's Fund Insurance Company ("FFIC"), is obligated to indemnify them. This matter is before the Court upon cross motions for summary judgment.

    **I.**    **BACKGROUND**

For many years prior to the events underlying this lawsuit, FFIC had been the underwriter of most of Warren's insurance policies. Gayle Mohney, Secretary and/or Administrative Assistant to Warren's City Manager, was the Warren employee responsible for maintaining and renewing Warren's various insurance policies. (See Gayle Mohney Deposition, Plaintiff's Motion, Ex. C, pp. 10, 13). Mohney had no prior experience with insurance-related matters, but acquired a general

1

understanding of insurance coverage issues through her twenty years of experience in purchasing policies for the City of Warren, reviewing proposals, keeping policies up to date, reviewing disclaimer letters and comparing them to policy terms, conversing with insurance agents, and generally maintaining the Warren policies. (Mohney Depo., pp. 12-13). In making decisions as to insurance-related matters and coverage issues, Mohney relied heavily upon the expertise of David W. Pearson, an agent for Garrison-Simonsen, Inc. ("Garrison"), Warren's insurance agent at all times relevant to the instant litigation. (See Mohney Depo., pp. 12-15; David Pearson Deposition, Plaintiff's Motion, Ex. D, pp. 8, 46).

Sometime in 1992, Pearson procured property, general liability, automobile liability, crime, and inland marine coverage for Warren through a program offered by AAIC and marketed and sold by The HDH Group ("HDH") known as the Pennsylvania Municipalities Insurance Program ("PMI Program"). The PMI program offered a variety of coverages to municipalities with populations ranging from 5,000 to 250,000. (See Plaintiff's Motion, Ex. A, p. 20). William Merrell, on behalf of HDH, assisted Pearson and Garrison in procuring the insurance for Warren. Merrell advised Pearson both orally and in writing that the PMI program excluded coverage for Public Officials Liability and Law Enforcement Liability. (William Merrell Affidavit, Defendant's Appendix 11, ¶¶ 18-20). Pearson was aware of and understood the features of the Program, including the Public Officials Liability exclusion. (Pearson Depo., p. 16). Pearson subsequently recommended to Mohney that Warren enroll in the PMI program, explained its features to her and advised her as to the need to procure "professional liability coverage for public officials in a separate policy." (Pearson Depo., p. 18).[1] Based on Pearson's understanding that an endorsement in the AAIC policy

---

[1] As a result of Pearson's efforts, AAIC issued Policy No. 8 91 MXG 80542062 to Warren under the PMI program, effective from September 30, 1992, through September 30, 1993. This policy was renewed annually from 1992 through 2000. (See Plaintiff's Motion, pp. 6-8; Plaintiff's Motion, Exhibits B, E-K). The policies relevant to this action are Policy No. 8 91 MXG 80684423, effective from October 1, 1997 through October 1, 1998 (Plaintiffs' Motion, Ex. I), Policy No. 8 91 MXG 80713623, effective from October 1, 1998 through
(continued...)

2

styled "Exclusion - Designated Professional Services" excluded liability for public officials, he procured separate coverage for "Public Officials and Employee Liability" from the Coregis Insurance Company. (Pearson Depo., pp. 16-18, 24, 42; Merrell Aff., ¶ 20).

Pearson and Mohney jointly reviewed the City of Warren's insurance policies annually as a part of their regular business relationship, including the policy exclusions. (Pearson Depo., pp. 35, 37-40; Mohney Depo., pp. 32-33). Pearson informed Mohney that the AAIC policy excluded coverage for "public officials liability" and that, consequently, he had procured alternate coverage for claims against public officials. (Pearson Depo., pp. 37-38). Although she couldn't recall the specifics of the conversation, it was her general understanding that the city had separate coverage for public officials liability because it was not covered by the AAIC policy. (Mohney Depo., pp. 64-65).

On October 22, 1999, Pellegrino Foods filed an action styled a Complaint Seeking Mandamus to Compel Issuance of a Building Permit against the city of Warren. Pellegrino Foods alleged that Warren had illegally and improperly denied Pellegrino Foods' application for a building permit to expand its plant. Upon receipt of the Complaint, Mohney forwarded it to David Pearson and requested that he forward the Complaint to AAIC. (See Mohney correspondence, Plaintiffs' Motion, Ex. M). On April 10, 2000, AAIC denied coverage relying on the "Exclusion - Designated Professional Services" endorsement. (See April 10, 2000 Denial Letter, Plaintiffs' Motion, Ex. N).

On May 26, 2000, the Pellegrino Plaintiffs filed a lawsuit against Warren before the undersigned (referred to hereinafter as "Pellegrino Foods Litigation") alleging that from 1993 through 1999, Warren engaged in a pattern of conduct of improperly and unreasonably handling zoning decisions, property sales, and other matters involving Pellegrino Foods with the intent to damage Pellegrino Foods' business and to block its expansion plans. (See Pellegrino Complaint,

---

[1](...continued)
October 1, 1999 (Plaintiffs' Motion, Ex. J), and Policy No. 8 91 MXG 80742617, effective from October 1, 1999 through October 1, 2000 (Plaintiffs' Motion, Ex. K).

Plaintiffs' Motion for Summary Judgment, Exhibit O). Specifically, the Pellegrinos alleged that Warren improperly contested the Pellegrinos' purchase of a parcel of land adjacent to their business property, refused to rezone property purchased by the Pellegrinos from residential to industrial despite doing so for many other area businesses, imposed unreasonable and cost-prohibitive restrictions on the Pellegrinos' application for a special exception, and improperly denied a building permit despite all conditions having been met. Based on this conduct, the Complaint alleged substantive and procedural due process violations under 42 U.S.C. § 1983 as well as conspiracy to violate 42 U.S.C. § 1983, tortious interference with prospective business and contractual relationships, and other state law claims. (Id.)

Warren timely notified Pearson of the pending Pellegrino Foods Litigation to ensure that the appropriate insurance carriers were put on notice. (Pearson Depo., pp. 23-24). Although he "had a reasonable idea that coverage wouldn't have been provided" under the AAIC policy, Pearson forwarded the complaint to AAIC and requested coverage. He wanted to make the "extra effort" to explore every potential insurance option because, in his experience, insurance companies will occasionally "pay for things that may not be covered under the letter of the policy" because of a mistaken belief that coverage is owed or for unanticipated business reasons. (Id. at 50-51).

By correspondence dated June 30, 2000, AAIC denied coverage for the Pellegrino Litigation. The denial letter stated in pertinent part:

> The allegations contained in the Complaint do not seek damages which arise from bodily injury or property damage caused by an occurrence. Nor do the allegations seek damages caused by advertising injury to which this insurance applies. Although [an] endorsement expands the definition of Personal Injury, please be advised that you[r] policy contains endorsement #CG 2116 7/98 entitled, Exlusion - Designated Professional Services which states "This insurance does not apply to bodily injury, property damage or personal and advertising injury due to the rendering of or failure to render any professional service. The professional service designated on your policy is "PUBLIC OFFICIALS."
> \*   \*   \*   \*   \*   \*   \*
> Considering the above reasons, Fireman's Fund will be unable to provide you with either indemnification or defense with regard to the pending litigation.

4

(Plaintiff's Motion, Ex. P, Denial Letter).

The "Personal and Advertising Injury Liability" provision referenced in the denial letter provides as follows:

> (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this insurance part applies. . .
>
> (b) This insurance applies to:
>
> > (1) **Personal injury** caused by an offense arising out of your business, excluding advertising; publishing, broadcasting or telecasting done by or for you;
> >
> > (2) **Advertising injury** caused by offense committed in the course of advertising your goods, products or services,
>
> but only if the offense was committed in the coverage territory during the policy period.

(Ex. I, p. 28; Ex. J, p. 29; Ex. K, p. 30). "Personal injury" is defined in the policies as, *inter alia*, "injury, other than bodily injury, arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor." (Ex. I, p. 37; Ex. J, p. 38; Ex. K, p. 39).

In 2003, Pearson wrote to AAIC and requested reconsideration of its previous denial of coverage. (Pearson Depo., p. 47). In response, AAIC reiterated its position that it would not defend or indemnify Warren with regard to the Pelligrino Foods Litigation. (Id. at 47-48).

Warren defended the lawsuit and prevailed in having several claims dismissed. See Pellegrino Food Products Co., Inc. v. City of Warren, 136 F.Supp.2d 391 (W.D. Pa. 2000), aff'd, 2004 WL 2650998 (3rd Cir. 2004). However, the substantive due process, equal protection, and tortious interference claims against Warren, Mayor John R. Nemcovsky, City Manager A. Kenneth Dupont, Solicitor William F. Morgan, Zoning Officer/Community Safety Officer Donald A. Worley, and Chairman of the Zoning Hearing Board George W. Crozier survived summary judgment and a

subsequent interlocutory appeal. (See Transcript of December 19, 2002 Hearing, Plaintiffs' Motion, Exhibit Z).

On the eve of trial, Warren entered into a settlement agreement with Pellegrino Foods wherein Warren agreed to pay Pellegrino damages in the amount of $2,500,000. The total settlement amount consisted of $500,000 to be paid directly by Warren, $1,000,000 to be paid by Coregis, and an assignment to the Pellegrinos of Warren's rights to the remaining $1,000,000 from Defendant AAIC. (See Settlement Agreement, Plaintiffs' Motion, Ex. Q; Note in Conjunction with Structured Settlement, Ex. R; Assignment and Assumption Agreement, Ex. S). Accordingly, the Court entered a Consent Judgment in favor of Pellegrino Foods and against Warren in the amount of $2,500,000. (See Consent Judgment, Plaintiffs' Motion, Ex. U). Coregis paid for a portion of Warren's defense costs pursuant to a "Public Officials and Employees Liability Insurance" policy in effect at the time of the Pellegrino claim, and ultimately paid out its policy limits in the settlement of the Pellegrino litigation. (Plaintiff's Motion, Ex. X).

The Plaintiffs commenced the instant litigation in October, 2005, seeking to enforce their rights as assignee of the City of Warren pursuant to the settlement in the Pellegrino Foods Litigation. Specifically, Plaintiffs seek a declaratory judgment that AAIC improperly denied coverage in the Pellegrino Food litigation.[2] The parties have each filed cross-motions for summary judgment and responses to the cross-motions; as such, this matter is ripe for review.[3]

## II. STANDARD FOR REVIEW

---

[2] The original Complaint in this action also alleged a breach of AAIC's duty to defend and various allegations of bad faith. However, this Court dismissed those causes of action as barred by the applicable statutes of limitations during a hearing on February 9, 2006.

[3] AAIC has not challenged the reasonableness of the settlement in the Declaratory Judgment action.

The standard for summary judgment in a declaratory judgment action is the same as for any other type of relief. Tranguard Ins. Co. of America, Inc. v. Hinchey, 464 F.Supp.2d 425 (M.D. Pa. 2006) (citing Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board, 298 F.3d 201, 210 n. 12 (3rd Cir. 2002)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all77 reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

### III.    ANALYSIS

In Pennsylvania, "the interpretation of insurance contracts is a question of law that properly may be decided by the court rather than a jury." Gamble Farm Inn, Inc. v. Selective Ins. Co., 656 A.2d 142 (Pa. Super. 1995). If possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. Houghton v. American Guarantee Life Ins. Co., 692 F.2d 289, 291 (3rd Cir. 1982). However, if the policy, when viewed as a whole, is reasonably susceptible to more than one interpretation, it must be considered ambiguous. Vlastos v.Sumimoto Marine & Fire Ins., 707 F.2d 775, 778 (3rd Cir. 1983).

Where a policy is determined to be ambiguous, a court may, in the absence of disputed facts, attempt to resolve the ambiguity. However, the parties disagree as to *how* such an ambiguity

should be resolved in the context of an insurance policy. Plaintiffs contend that an ambiguity in an insurance policy must always be resolved against the insurer and, consequently, resort to extrinsic or parole evidence is never appropriate in the insurance context. (Plaintiffs' Memorandum in Opposition, Dkt. # 58, pp. 3-8). AAIC, on the other hand, argues that resort to extrinsic or parole evidence is not precluded to discern the parties' intent and resolve an ambiguity merely because an insurance contract is involved. (Defendant's Brief in Response, Dkt. #53, pp. 24-31). Since the resolution of this legal issue is central to our mode of analysis, we address it first.

The Pennsylvania Supreme Court has frequently reiterated the hornbook principle that extrinsic evidence of the intent of parties to a contract may be utilized by a court to interpret ambiguous language therein:

> Determining the intention of the parties is a paramount consideration in the interpretation of any contract. The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. However, as this Court stated in Herr Estate, 400 Pa. 90, 161 A.2d 32 (1960), "where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances."

Hutchison v. Sunbeam Coal Corp., 519 A.2d 385 (Pa. 1986) (citing Herr Estate, 400 Pa. 90 (1960)).

However, in Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563 (Pa. 1983), the Pennsylvania Supreme Court articulated the following approach relative to the construction of insurance policies:

> The goal of [interpreting insurance contracts] is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Standard Venetian Blind, 469 A.2d at 566. Similarly, in Bateman v. Motorists Mut. Ins. Co., 590 A.2d 281 (Pa. 1991), the court noted:

> The principles governing the interpretation of a contract of insurance are also well settled. Review is aimed at ascertaining the intent of the parties as manifested by the language of the written instrument. Where the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument.

Bateman, 590 A.2d at 283-84. After determining that the word "otherwise" rendered the phrase "[a]ny amounts otherwise payable for damages under this coverage shall be reduced by all sums paid. . ."ambiguous, the Bateman court construed the policy term against the insurance company without considering extrinsic evidence. Id. at 283.

Plaintiffs rely on Standard Venetian Blind and its progeny for the proposition that resort to extrinsic evidence to resolve an ambiguity in an insurance contract is unnecessary and improper since the ambiguity must, as a matter of law, be resolved against the drafter. However, Third Circuit jurisprudence does not support the proposition that resort to extrinsic evidence is precluded, in all cases, in order to determine the parties' intent relative to the operation or effect of language in an insurance policy. For example, in 12th Street Gym, Inc., v. General Star Indemnity Company, 93 F.3d 1158 (3rd Cir. 1996), the Court was asked to determine whether a liability insurance policy's Sexually Transmitted Disease Exclusion excluded coverage for claims arising out of a gym member's expulsion due to a diagnosis of AIDS. The Court concluded that the exclusion was susceptible to various reasonable interpretations and sanctioned the use of extrinsic evidence to resolve the ambiguity:

> The Gym and Guzzardi contend the ambiguous language in the [policy] should be construed against General Star. See, e.g., Standard Venetian Blind Co., 469 A.2d at 566 (where the language is ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement"). But a court will only construe ambiguous language against the drafter ***in the absence of relevant extrinsic evidence***. Hutchison, 519 A.2d at 390-91 n. 5.

12th Street Gym, 93 F.3d at 1166 (emphasis supplied). After determining that the extrinsic evidence before it was insufficient to resolve the ambiguity, the Court remanded to the district court for further

fact-finding. Id. See also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3rd Cir. 2005) ("When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract."); Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3rd Cir. 1995) ("When a term in the policy is ambiguous, however, and the intention of the parties cannot be discerned from the face of the policy, the court, in its attempts to arrive at a reasonable construction of the policy that is in accord with the parties' apparent intention, may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract.").

Plaintiffs contend that two recent Pennsylvania Supreme Court cases, Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company, 905 A.2d 462 (Pa. 2006), and Prudential Property and Casualty Insurance Company v. Sartno, 903 A.2d 1170 (Pa. 2006), compel the conclusion that resort to extrinsic evidence is never appropriate to resolve an ambiguity in an insurance policy. In Prudential Property, the Pennsylvania Supreme Court interpreted an automobile insurance contract containing an exclusion that the court found to be susceptible to more than one reasonable meaning. In resolving the ambiguity, the court held:

> Regardless of which [interpretation] is "right" or "wrong," the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.

Prudential Property, 903 A.2d at 1177 (internal citations omitted).

Decided just two days later, Insurance Adjustment Bureau involved an ambiguity in an assignment contract, rather than an insurance contract. In the context of determining whether a written agreement between an insurance company and another company's insured entitled the former to a payment of insurance proceeds, the court explained:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the

10

> intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 519 A.2d 385, 390 (1986). When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 663 (1982); In re Herr's Estate, 400 Pa. 90, 161 A.2d 32, 34 (1960).

Insurance Adjustment Bureau, 905 A.2d at 468-69 (some internal citations omitted).

Plaintiffs rely on Federal Ins. Co. v. Continental Casualty Co., 2006 WL 3386625 (W.D. Pa. 2006), wherein the court reached the following conclusion as to the import of Prudential Property and Insurance Adjustment Bureau:

> In the wake of The Insurance Adjustment Bureau, Inc. and Prudential Property, it appears that Pennsylvania law distinguishes between insurance contracts and other types of contracts. While the general contract law of Pennsylvania provides that unambiguous writings are construed by the court as a matter of law and ambiguous writings are construed by the finder of fact, the insurance contract law of Pennsylvania provides only for a judicial construction as a matter of law, with all ambiguities to be resolved in favor of the insureds. . . . Any language to the contrary in 12th Street Gym, Inc. is due to the lack of clarity that existed in the law of Pennsylvania ten years ago.

Id. We respectfully disagree.

First, Insurance Adjustment Bureau, a non-insurance case, simply reiterates the well established principle that parole evidence may be utilized to resolve an ambiguity in a contract. In Prudential Property, where the court construed an ambiguous term against the insurance carrier, there was no indication that any extrinsic evidence was offered much less available to clarify the term.[4]

---

[4] Indeed, in the context of personal auto policies the lack of relevant extrinsic evidence is not surprising. Typically, there is no interaction between the insured and the carrier relative to the meaning or effect of policy terms.

We also note that the Third Circuit has recently reiterated the propriety of examining extrinsic evidence, in an appropriate case, when construing an insurance policy. See Allstate Indemnity Co. v. Coroniti, 2007 WL 3118329 (3rd Cir. 2007). In Allstate Indemnity, the insured had purchased automobile insurance from Allstate prior to sustaining an injury in an automobile accident. When the parties disagreed as to the amount of coverage owed, the district court relied on extrinsic evidence of their intent to resolve the issue in favor of the insurance company. The Third Circuit, on appeal, rejected the insured's argument that resort to extrinsic evidence was inappropriate in the context of an insurance policy:

> The law of this circuit is clear that when the written contract is clear and unequivocal, there is no need to resort to extrinsic evidence. See Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc., 247 F.3d 79, 92 (3rd Cir. 2001). On the other hand, our cases have permitted consideration of extrinsic evidence in order to determine whether the ambiguity can be resolved. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3rd Cir. 2005); Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3rd Cir. 1995).

Allstate Indemnity, 2007 WL 3118329, at *1.

The Third Circuit's opinion in Allstate Indemnity postdates Federal Ins. Co, Prudential Property and Insurance Adjustment Bureau. Thus, for the reasons set forth above, we will consider relevant extrinsic evidence, where available, to resolve ambiguities in the AAIC insurance policy.

AAIC first contends that it properly denied insurance coverage in the underlying Pellegrino litigation against the City of Warren because the claims raised by the Pellegrino plaintiffs did not trigger the "Personal Injury Liability" provision in the AAIC policy. "Personal Injury" is defined in the relevant policy:

> **Personal Injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:
> \* \* \* \* \* \* \*
> (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a

> room, dwelling or premises that a person occupies
> by or on behalf of its owner, landlord or lessor...

(Ex. I, p. 37; Ex. J, p. 38; Ex. K, p. 39).

As previously discussed, the Pellegrinos asserted Substantive Due Process and Equal Protection claims based upon the city of Warren's allegedly discriminatory pattern of conduct with regards to zoning decisions, property sales, and other matters. Based on this Court's prior ruling that those claims were premised upon a "viable and well-established property interest, to wit, the right not to have an expansion of one's property or nonconforming use interfered with by allegedly arbitrary and/or willful actions on the part of governmental officials," Plaintiffs assert that their claims allege the "invasion of the right of private occupancy" of a premises. (See Transcript of December 19, 2002 Hearing, Plaintiffs' Motion, Exhibit Z, p. 7).

The precise scope of coverage afforded by the phrase "invasion of the right of private occupancy" has never been interpreted by any Pennsylvania court or federal court applying Pennsylvania law. However, the Third Circuit considered this phrase in the context of Delaware law in New Castle County, DE v. Nat'l Union Fire Ins. Co., 243 F.3d 744 (3rd Cir. 2001). In New Castle, New Castle County, a political subdivision, had repeatedly frustrated a real estate developer's plans to develop certain tracts of property by denying the requisite building permits, voiding a development plan, and rezoning one of the properties. The Court reviewed the widely divergent opinions regarding the meaning of the phrase "invasion of the right of private occupancy" and noted that "some courts have held that the language at issue is ambiguous simply because of the wide variance among judicial opinions," "some courts have held that an 'invasion of the right of private occupancy' is ambiguous as a matter of law," and that other states require a variety of factually specific conditions, such as a physical invasion or a landlord-tenant relationship, before the provision is implicated. Id. at 750-54 (collecting and summarizing cases). The Court concluded that the phrase was ambiguous as a matter of law:

> A single phrase, which insurance companies have consistently
> refused to define, and that has generated literally hundreds of

> lawsuits, with widely varying results, cannot, under our application of commonsense, be termed unambiguous.

New Castle, 243 F.3d at 756 (citations omitted).

Consistent with New Castle, we find that the identical phrase "invasion of the right of occupancy" in the AAIC policy is ambiguous as well. Moreover, we note that neither party has cited us to anything in the record that might constitute extrinsic evidence of the parties' intent as to the meaning of this phrase. Hence, we resolve that ambiguity in favor of the Plaintiff and conclude that a viable personal injury claim was asserted in the underlying Pellegrion litigation. See 12th Street Gym, 93 F.3d at 1166 ("a court will . . . construe ambiguous language against the drafter in the absence of relevant extrinsic evidence.") (citing Hutchison, 519 A.2d at 390-91 n. 5).

In the alternative, AAIC contends that the claims asserted in the underlying Pellegrino litigation were excluded by virtue of the "Exclusion - Designated Professional Services" endorsement in the policy. The "Description of Professional Services" section of the endorsement lists "PUBLIC OFFICIALS" on the exclusionary form, indicating that certain professional services and certain actions by public officials are not intended to be covered under the policy. However, the terms "Professional Services" and "Public Officials" are not defined anywhere in the policy, and no explanation of those terms is otherwise given. (See generally, Ex. I; Ex J; Ex K). Plaintiffs argue that the omission of language defining those terms renders them inherently ambiguous and ask us, therefore, to construe them against AAIC as a matter of law.

The following exchange with defense counsel occurred at oral argument relative to the term "public official":

| | |
|---|---|
| The Court: | In the absence of extrinsic evidence and just looking at the face of the policy, is there an ambiguity as to what the term public official means? |
| Counsel: | I will concede that the policy does not define public officials. |
| The Court: | It would be helpful, wouldn't it – it would have been helpful? |
| Counsel: | Yes, but not necessary here, judge. |

| | |
|---|---|
| The Court: | Why not? |
| Counsel: | Because the understanding of the parties was the public officials meant the other policy. And the other policy would include both the city and all of the other defendant individuals that you're referring to, judge. |

(Transcript of Hearing, November 29, 2007, pp. 47-48).

Assuming *arguendo* that the lack of definition relative to the terms "public official" and/or "professional services" creates an ambiguity, we turn to examine the extrinsic evidence insofar as it is relevant to ascertaining the parties' intent. The deposition testimony of both Pearson and Mohney provide clear evidence of the parties' intent and understanding regarding the scope of the public officials coverage under the AAIC policy. When Pearson first considered procuring insurance for the Warren through the PMI program, HDH explained to him that the program contained an exclusion for public officials liability. (Pearson Depo., p. 16) In describing the contours of the coverage to Mohney, Pearson explained that he needed to procure "professional liability coverage for public officials in a separate policy." (Pearson Depo., p. 18). Pearson further understood that the policy he obtained from Coregis Insurance Company was intended to provide the public officials liability coverage that was excluded under the PMI program. (Pearson Dep., pp. 16-18, 24).

In addition, Pearson and Mohney jointly reviewed Warren's insurance policies annually as a part of their regular business relationship, including the proposals for the AAIC policy and the policy exclusions. (Pearson Depo., pp. 35, 37-40; Mohney Depo., pp. 32-33). Pearson informed Mohney that the AAIC policy excluded coverage for "public officials liability" and that he had procured alternate coverage for claims against public officials. (Pearson Depo., pp. 37-38). Although she couldn't recall the specifics of that conversation, it was Mohney's general understanding that the city had separate coverage for public officials liability because it was not covered by the AAIC policy. (Mohney Depo., pp. 64-65).

We conclude, based on the above, that the extrinsic evidence clearly establishes that Warren at all material times was on notice that liability for certain actions by public officials was not covered

under the AAIC policy and that coverage for public officials, therefore, was procured in a separate policy from Coregis.[5]

Finally, Plaintiffs argue that the Public Officials exclusion is inoperative because in the earlier policies issued by AAIC under the PMI program, there is nothing written under the section titled "Exlusion - Designated Professional Services." The term "PUBLIC OFFICIALS" does not appear in the description of that endorsement until the 1995-96 policy and each policy issued thereafter. It is axiomatic that an insurer cannot deny coverage by relying on an exclusion or limitation which was not made known to the insured. See, e.g., Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920 (Pa 1987). However, it is clear from the record that the phrase "PUBLIC OFFICIALS" appeared in at least two policies issued by AAIC prior to the 1997-98 policy. (See AAIC Policy 1995-96; AAIC Policy 1996-97). Moreover, Mohney and Pearson jointly reviewed the policy on an annual basis. (Pearson Depo., pp. 35, 37-40; Mohney Depo., pp. 32-33).

### IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED.

---

[5] Plaintiffs also argue that the "Exclusion - Designated Professional Services" endorsement, as interpreted by AAIC, conflicts with another endorsement in the policy. The endorsement titled "Pennsylvania Changes - Additional Insured - Municipalities" extends coverage under the policy to include, *inter alia*, elected officials, elected or appointed members of commissions and boards, and the commission and boards operated by a municipality, while acting within the scope of their duties. This endorsement, however, extends coverage only for general liability, rather than for wrongful acts by public officials in their capacity as public officials. Thus, there is no conflict.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PELLEGRINO FOOD PRODUCTS CO., INC., )
as assignee of the Rights of the City of Warren, *et* )
*al*., )
                                                         Plaintiffs, )
        v. )      C.A. No. 05-312 Erie
)      Judge McLaughlin
AMERICAN AUTOMOBILE INSURANCE CO., )
)
                                                        Defendant. )

## **ORDER**

AND NOW, this 19th day of March, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED. Judgment is entered in favor of Defendant and against Plaintiffs.

                                                       /s/ Sean J. McLaughlin
                                                       United States District Judge

cm: All parties of record. ___